**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **LEXINGTON INSURANCE COMPANY** | * | **CIVIL ACTION NO. 11-1865** |
| **Plaintiff** | * | |
| | * | **SECTION "R"(3)** |
| **VERSUS** | * | |
| | * | **JUDGE SARAH S. VANCE** |
| **ST. BERNARD PARISH GOVERNMENT** | * | |
| **Defendant** | * | **MAGISTRATE JUDGE** |
| | * | **KNOWLES** |
| | * | |

* * * * * * * * * * * * * * * * * * * *

## PRETRIAL ORDER

Plaintiff, Lexington Insurance Company ("Lexington"), and Defendant, St. Bernard Parish Government ("SBPG"), (collectively the "Parties") submit the following Pretrial Order in the above-captioned matter:

1. **Date of Pretrial Conference**:

   June 6, 2012 at 2:30 p.m.

2. **Appearance of Counsel**:

   Robert I. Siegel, Esq. (La. Bar No. 12063)
   Alistair M. Ward (La. Bar No. 24693)
   Gieger, Laborde & Laperouse, LLC
   One Shell Square – Suite 4800
   701 Poydras Street
   New Orleans, Louisiana 70139-4800
   Telephone:     (504) 561-0400
   Facsimile:     (504) 561-1011
   *Attorneys for Lexington Insurance Company*

   William M. McGoey, Esq. (La. Bar No. 14205)
   Jeanne N. Juneau, Esq. (La. Bar No. 25123)
   8201 W. Judge Perez Drive
   Chalmette, Louisiana 70043
   Telephone:     (504) 278-4348
   Facsimile:     (504) 278-4493
   *Attorneys for St. Bernard Parish Government*

3. **Description of Parties**:

Lexington is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in the State of Massachusetts. Lexington issued Public Entities Excess Liability Policy Numbers 9607745, 001751696, 026462477 to SBPG in effect from February 1, 2008 to February 1, 2009, February 1, 2009 to February 1, 2010 and February 1, 2010 to February 1, 2011, respectively.

Defendant, SBPG, is a political subdivision of the State of Louisiana.

4.a. **Jurisdiction**:

Lexington brought the instant declaratory judgment action pursuant to 28 U.S.C. §§ 2201 and 2002. Additionally, the Court has jurisdiction over this matter pursuant to Diversity Jurisdiction, 28 U.S.C. § 1332. Complete diversity exists among the parties because Lexington is a Delaware corporation with its principal place of business in the State of Massachusetts, whereas the SBPG is a political subdivision of the State of Louisiana, and as such, it is considered a citizen of Louisiana for diversity jurisdiction purposes.

4.b. **Amount in Controversy**:

The Parties stipulate that the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. **Pending or Contemplated Motions**:

Lexington filed a Motion for Summary Judgment, which is currently pending before the Court. No other motions are pending or contemplated by the Parties at this time.

6. **Brief Summary of Material Facts**:

    a. **Plaintiff**:

In February of 2008, SBPG condemned a number of structures within the parish that it determined had failed to meet the minimum housing standards mandated by the St. Bernard Parish Code of Ordinances. In addition, the condemnation identified those structures within St. Bernard that posed a threat to the health and/or safety of the residents of the parish.

On February 26, 2009, a lawsuit was filed in Louisiana state court against SBPG, styled *Nolan Estopinal, et al v. Parish of St. Bernard, et al.*, 34th Judicial District Court of St. Bernard Parish, Louisiana, Case No. 113,313 (the "*Estopinal* Litigation"). In addition to the *Estopinal* Litigation, other suits have been filed against SBPG seeking similar relief (collectively the "Underlying Lawsuits"). At a minimum, seventy three (73) named plaintiffs and fifty-seven (57) properties are identified in the *Estopinal* Litigation. Each plaintiff claims his property was demolished and/or damaged by SBPG. The condemnation and demolition actions took place over the course of more than a year, with different properties located in different places being demolished and damaged at different dates and times.

SBPG seeks coverage under the Lexington Policies for the claims asserted in the Underlying Lawsuits. As explained in Lexington's pending Motion for Summary Judgment, coverage is not triggered under the Lexington Policies as there has been no "occurrence." Specifically, the property damage did not arise out of an accident and it was expected or intended from the standpoint of SBPG. SBPG does not contest that the damage or destruction of the properties was not an accident and that the damage was expected and intended from its standpoint. Additionally, SBPG is not the landlord, owner or lessor of the subject property so as to potentially trigger coverage for emotional damages under the "personal and advertising injury" coverage. SBPG also does not contest that it was not the owner, landlord or lessor of the properties damaged or destroyed. Alternatively, if there has been an "occurrence," the damage

3

to each individual property constitutes a separate occurrence under the Lexington Policies, such that Lexington's duties under the policies, if any, are not triggered until the $250,000 retained limit for each occurrence is exhausted.

    b.    **Defendant**:

Hurricane Katrina hit St. Bernard Parish on August 29, 2012. It flooded virtually every structure in the Parish with several feet of water. St. Bernard Parish Government ("SBPG") was faced with the monumental task of recovering from the disaster. On July 6, 2006, SBPG passed an ordinance to require the renovation of properties within established time-lines and to condemn structures for demolition. Over the next two years, SBPG passed numerous ordinances condemning thousands of structures. In 2008 and 2009, thousands of properties were demolished. Seventy-three plaintiffs filed a class action suit against SBPG for demolition/damage to 57 properties in the 34th JDC for the Parish of St. Bernard in *Nolan Estopinal vs. Parish of St. Bernard,*#113,313. Approximately 30 other plaintiffs filed separate suits (sometimes referred to herein as the "individual cases").

SBPG purchased a Public Excess Liability policy from Lexington Insurance for the periods February 1, 2009 to February 1, 2010 and February 1, 2010 to February 1, 2011. Lexington filed this action for declaratory relief a judgment decreeing that each demolition or damage to each piece of property is a separate occurrence. In other words, Lexington seeks judgment finding that a separate $250,000.00 self-insured retention applies to each piece of property. SBPG opposes and asserts that there is one $250,000 deductible that applies to all of the thousands of demolitions, as the demolitions or a "series of continuous or repeated or related occurrences" under the Lexington Policies.

4

Lexington also seeks a judgment ordering that there is no coverage at all. This argument is premised on its argument that the demolition/condemnations do not constitute "occurrences" under the policy. SBPG opposes this as it is beyond the relief prayed for. Alternatively, SBPG contends that the demolitions are occurrences under the policy definition of an occurrence under the "personal and advertising injury" coverage, as the suits arise out of the "wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy from a room."

7. **Uncontested Material Facts**:

   1. Lexington issued Public Entities Excess Liability Policy Numbers 9607745, 001751696, 026462477 to SBPG in effect from February 1, 2008 to February 1, 2009, February 1, 2009 to February 1, 2010 and February 1, 2010 to February 1, 2011, respectively.

   2. The Lexington Policies provide coverage for "that portion of the **ultimate net loss**, in excess of the **retained limit** or **underlying insurance**, whichever is greater, that the **insured**, becomes legally obligated to pay as **loss amounts** by reason of liability imposed by law or assumed under an **insured contract** because of **bodily injury, property damage**, or **personal and advertising injury** arising out of an **occurrence** during the Policy Period and to which this insurance applies."

   3. The Lexington Policies define "personal and advertising injury," in relevant part, as follows:

      AA. **Personal and advertising injury** means injury, including consequential bodily injury arising out of one or more of the following offenses:

      * * *

        3.      The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

4.     The Lexington Policies define "occurrence" as follows:

    1.     With respect to **bodily injury** or **property damage**, an accident, including continuous, repeated, or related exposure to substantially the same general harmful conditions, which results in **bodily injury** or **property damage** neither expected or intended from **your** standpoint. All such exposure to substantially the same general harmful conditions will be deemed to arise out of one **occurrence**.

    In the event of continuing or progressively deteriorating damage over any length of time, such damage shall be deemed to be one **occurrence**, and shall be deemed to occur only when such damage first commences.

    2.     With respect to **personal and advertising injury**, an offense arising out of **your insured organization** work that causes **personal and advertising injury**. All damages that arise from the same, related or repeated injurious material or act will be deemed to arise out of one **occurrence**, regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.

5.     The Lexington Policies define "retained limit" as:

6

The **retained limit** applicable to each and every **occurrence, wrongful act, employment practices wrongful act,** or **employment benefit wrongful act** as shown in the Declarations and to which this insurance applies.

The **retained limit** shall be reduced by the payment of **loss amounts**, but shall not be reduced by the salaries of **your employees, your** office expenses, or expenses or any claims servicing organization that **you** have engaged.

6. The Lexington Policies define "loss amounts" as:

   **Loss amounts** means damages and shall also include all fees, including legal fees, costs and expenses, as well as those expenses described in subparagraph B.3.b. of SECTION I. COVERAGES that **we** incur in connection with the defense and settlement of **claims** or **suits we** defend. **Loss amounts** shall not include salaries of **our** employees.

7. With regard to the retained limit, the Lexington Policies provide that "the retained limit as shown in the Declarations:

   **1.** Shall be reduced by **loss amounts** paid for **occurrences, wrongful acts, employment practices wrongful acts,** or **employee benefit wrongful acts** covered under this Policy; and

   **2.** Applies separately to each and every **occurrence, wrongful act, employment practices wrongful act,** or **employee benefit wrongful act** or series of continuous, repeated, or related

7

   **occurrences, wrongful acts,** or **employee benefit wrongful acts;** and

  **3.** Applies separately to each **municipality** insured under this Policy in the event that there are multiple **municipalities** as Named Insureds.

8. Lexington's duty, if any, to pay under the policy "arises only after there has been a complete expenditure of **your retained limit** or all **underlying insurance,** whether collectible or not, has been exhausted by means of payments for judgments, settlements, or defense costs. **Your retained limit** shall not be exhausted by **your** office expenses, **employees'** salaries, or expenses of any **claims** servicing organization that **you** have engaged. **We** will then be liable only for that portion of damages in excess of **your retained limit** up to **our** limits of insurance."

9. The Lexington Policies are subject to a ten million ($10,000,000.00) per occurrence and aggregate limit of liability.

10. In addition, the Lexington Policies are subject to a two-hundred and fifty thousand dollar ($250,000.00) per occurrence retained limit.

11. In February of 2008, the St. Bernard Parish Government condemned a number of structures within the parish that it felt had failed to meet the minimum housing standards mandated by the St. Bernard Parish Code of Ordinances.

12. The condemnation also identified those structures within St. Bernard Parish that posed a threat to the health and/or safety of the residents of the parish.

13. On February 26, 2009, a lawsuit was filed in Louisiana state court against the Parish of St. Bernard, styled *Nolan Estopinal, et al v. Parish of St. Bernard, et al.*, 34th Judicial District Court of St. Bernard Parish, Louisiana, Case No. 113,313.

14. The currently controlling pleading, the Fourteenth Amended and Supplemental Petition, in the *Estopinal* Litigation was filed on October 11, 2010.

15. In addition to *Estopinal* Litigation, other suits have been filed against the Parish of St. Bernard seeking similar relief.

16. At a minimum, seventy three (73) named plaintiffs and fifty-seven (57) properties are identified in the *Estopinal* Litigation.

17. Each plaintiff claims his property was demolished and/or damaged by the St. Bernard Parish Government.

18. The condemnation and demolition actions took place over the course of more than a year, with different properties located in different places being demolished and damaged at different dates and times.

19. The value of each property demolished or damaged is less than $250,000.00.

20. St. Bernard Parish Government is not the owner, landlord or lessor of any of the subject properties.

21. St. Bernard Parish Government seeks coverage under the Lexington Policies for the claims asserted in the underlying actions.

8. **Contested Issues of Fact**:

None.

9. **Contested Issues of Law**:

1. Whether the intentional demolition of the subject properties constitutes an "occurrence" under the Lexington Policies[i]; and

2. To the extent there has been an "occurrence," whether the demolition or destruction of each separate property, which took place at individual times and locations, constitutes a separate "occurrence" under the Lexington Policies such that the $250,000 per occurrence retained limit must be exhausted for each separate property damaged or destroyed by SBPG.

10. **Exhibits**:

   a. **Plaintiff**:

   1. Public Entities Excess Liability Policy Number 9607745 issued by Lexington to SBPG in effect from February 1, 2008 to February 1, 2009;

   2. Public Entities Excess Liability Policy Number 00751696 issued by Lexington to SBPG in effect from February 1, 2009 to February 1, 2010.

   3. Public Entities Excess Liability Policy Number 026462477 issued by Lexington to SBPG in effect from February 1, 2010 to February 1, 2011.

   4. The Original, First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, Twelfth, Thirteenth, and Fourteenth Supplemental and Amending Petitions for Damages and any subsequent petitions for damages filed in *Estopinal, et al. v. Parish of St. Bernard*, No. 113-313, 34th Judicial District Court for the Parish of St. Bernard, State of Louisiana.

5. Any and all Reservation of Rights letters sent to SBPG by Lexington involving coverage for claims asserted against for the damage or destruction of property resulting from SBPG's condemnation activities;

6. Any documents, thing or piece of evidence necessary to impeach the testimony or credibility of any witness;

7. Any document, thing or piece of evidence listed by SBPG in its Exhibit List.

b. **Defendant**:

1. Public Entities Excess Liability Policy Number 9607745 issued by Lexington to SBPG in effect from February 1, 2008 to February 1, 2009, the declaration page and premium info.;

2. Public Entities Excess Liability Policy Number 00751696 issued by Lexington to SBPG in effect from February 1, 2009 to February 1, 2010, the declaration page and premium info.;

3. Public Entities Excess Liability Policy Number 026462477 issued by Lexington to SBPG in effect from February 1, 2010 to February 1, 2011, the declaration page and premium info.;

4. The Original, First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, Twelfth, Thirteenth, and Fourteenth Supplemental and Amending Petitions for Damages and any subsequent petitions for damages filed in *Estopinal, et al. v. Parish of St. Bernard*, No. 113-313, 34th Judicial District Court for the Parish of St. Bernard, State of Louisiana.

5. Any letters and e-mails from SBPG to Lexington regarding coverage.

6. Any and all Reservation of Rights letters sent to SBPG by Lexington involving coverage for claims asserted against for the damage or destruction of property resulting from SBPG's condemnation activities;

7. February 28, 2011 letter, from Willliam M. McGoey to Michael F. Sullivan

8. April 8, 2011 e-mail from Sullivan to McGoey

9. August 1, 2011 letter from Sullivan to McGoey

10. All claim forms in the Estopinal case

11. All discovery and depositions in the Estopinal Case

12. All Petitions/Complaints in the individual cases filed by plaintiffs against SBPG, seeking damages for demolition of their structures.

    > **LEXINGTON'S OBJECTION: This exhibit is vague and ambiguous as SBPG does not identify what cases are encompassed within the term "individual cases," and as such, Lexington objects to the introduction of any petitions or complaints from any suit for which Lexington has not received notice as irrelevant.**

13. Each demolition file for each of the structures owned by plaintiffs in the Estopinal case and the individual cases.

    > **LEXINGTON'S OBJECTION: This exhibit is vague and ambiguous as SBPG does not identify what cases are encompassed within the term "individual cases," and as such, Lexington objects to the introduction of any demolition file for any property at issue in a suit for which Lexington has not received notice as irrelevant.**

14. All SBPG ordinances applicable to the demolition of the structures.

15. The condemnation policy of SBPG

16. Declarations of emergency by the state and SBPG.

17. Pictures and diagrams of demolished structures in the Estopinal case and the individual cases.

> **LEXINGTON'S OBJECTION: This exhibit is vague and ambiguous as SBPG does not identify what cases are encompassed within the term "individual cases," and as such, Lexington objects to the introduction of any pictures relating to any suit for which Lexington has not received notice as irrelevant.**

18. Any discovery documents in the present case.

19. Any document listed by plaintiff in this litigation or introduced by plaintiff.

11. **Deposition Testimony**

    None.

12. **Description of Charts, Graphs, Models, Schematic Designs**:

    The parties may use charts, graphs, models or schematic designs during opening statements, the introduction of evidence and closing arguments for demonstrative purposes.

13. **Witnesses**

    a. **Plaintiff**:

    1. A representative of Lexington;
    2. Craig Taffaro;
    3. Michelle Walsh;
    4. David E. Peralta;
    5. Chris Merkl;
    6. Michael Dorris;
    7. Jerry Graves;

8. Mary Chimento;

9. Louis Pomes;

10. Clay Dillon;

11. William McCartney;

12. Any member of the St. Bernard Parish Council Members or the St. Bernard Parish Government;

13. Any witness whose testimony may be used to impeach or contradict the testimony of Defendant;

14. Any witness necessary to authenticate any document or piece of evidence;

15. Any expert witness retained during discovery;

16. Any and all witnesses identified or listed by any other party in their Witness and Exhibit List.

b. **Defendant**:

1. A representative of Lexington;

2. Craig Taffaro;

3. Michelle Walsh;

4. David E. Paralta;

5. Chris Merkl;

6. Michael Dorris;

7. Jerry Graves;

8. Mary Chimento;

9. Louis Pomes;

10. Clay Dillon;

11. William McCartney;

12. Tim Avegno, Eagan Insurance Agency

13. A representative of Baroka and Bonura Engineers and Consultants

14. A representative of United Recovery Group

15. Any member of the St. Bernard Parish Council Members or the St. Bernard Parish Government;

16. Any witness whose testimony may be used to impeach or contradict the testimony of Plaintifft;

17. Any witness necessary to authenticate any document or piece of evidence;

18. Any expert witness retained during discovery;

19. Any and all witnesses identified or listed by any other party in their Witness and Exhibit List.

14. **Jury Trial**:

SBPG requested a trial by jury, but as the only issues remaining are issues of law, all issues may be tried before the Judge.

15. **Bifurcation**

Damages are not sought in this action.

16. **Matters Which May Expedite Disposition**:

A ruling on the Motion for Summary Judgment filed by Lexington may negate the need for trial. Other than the pending Motion for Summary Judgment, the parties do not know of any matters which might expedite disposition.

17. **Trial**:

Trial shall commence June 11, 2012 at 8:30 a.m. and is expected to encompass three trial days.

18. This Pretrial Order has been formulated after conference at which counsel for the respective parties conferred by telephone and email. Reasonable opportunity has been afforded counsel for corrections or additions prior to signing. Hereafter, this order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice.

19. **Settlement**.

Damages are not at issue in this case.

20. **Signatures of Counsel**:

/s/ Robert I. Siegel_____
ROBERT I. SIEGEL, ESQ. (#12063)
E-Mail:    rsiegel@glllaw.com
ALISTAIR M. WARD, ESQ. (#24693)
Gieger, Laborde & Laperouse, LLC
One Shell Square – Suite 4800
701 Poydras Street
New Orleans, Louisiana 70139-4800
Telephone:    (504) 561-0400
Facsimile:    (504) 561-1011
*Counsel for Lexington Insurance Company*


/s/ William M. McGoey_____
WILLIAM M. MCGOEY, ESQ. (#14205)
JEANNE N. JUNEAU, ESQ. (# 25123)
8291 W. Judge Perez Drive
Chalmette, Louisiana 70043
Telephone:    (504) 278-4348
Facsimile:    (504) 278-4493
*Counsel for St. Bernard Parish Government*

_____

UNITED STATES DISTRICT JUDGE

---

[i] SBPG contends that this issue is not before this court and does not waive this position by the inclusion of the issue in the Pre-Trial Order.