## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **LEXINGTON INSURANCE COMPANY** | * | **CIVIL ACTION NO. 11-1865** |
| **Plaintiff** | * | |
| | * | **SECTION "R"(3)** |
| **VERSUS** | * | |
| | * | **JUDGE SARAH S. VANCE** |
| **ST. BERNARD PARISH GOVERNMENT** | * | |
| **Defendant** | * | **MAGISTRATE JUDGE** |
| | * | **KNOWLES** |
| | * | |

* * * * * * * * * * * * * * * * * * * *

## PROPOSED FINDINGS OF FACT FILED BY ST BERNARD PARISH GOVERNMENT

St. Bernard Parish Government submits the following Proposed Findings of Fact.

1. Hurricane Katrina hit St. Bernard Parish on August 29, 2005. Stipulation 1.

2. Hurricane Katrina flooded virtually every structure in the Parish with several feet of water. St. Bernard Parish Government ("SBPG") was faced with the task of recovering from the disaster. Stipulation 2.

3. Eleven months after the storm St. Bernard Parish still had thousands of homes that were not renovated that were unsafe, dangerous, posed a threat to public safety, and did not meet minimum housing standards. Stipulation 3.

4. SBPG implemented a plan to demolish the homes that were not being renovated by their owners by passing ordinances and implementing procedures, which included an appeal process to provide notice to property owners, so that the demolitions could proceed. Stipulation 4. See Defendant's Exhibits 6 &7.

5. SBPG contracted with several contractors to assist the Parish in carrying out the demolitions and to assist the Parish in obtaining federal FEMA funds for the Katrina-related demolitions. Stipulation 5.

6.  On July 6, 2006, SBPG passed an ordinance to require the renovation of properties within established time-lines.  Over the next several years, SBPG passed numerous ordinances condemning thousands of structures that were not renovated. Stipulation 6.

7.  SBPG's agents entered thousands of properties, inspected them, and placed demolition placards/notices on the structures. Stipulation 7.

8.  SBPG's agents ultimately went on thousands of properties and tore down thousands of structures, most of which were houses. Stipulation 8.

9.  In February of 2008, the St. Bernard Parish Government condemned a number of structures within the parish that it felt had failed to meet the minimum housing standards mandated by the St. Bernard Parish Code of Ordinances. Stipulation 19; Defendants Exhibit 7.

10. The condemnation also identified those structures within St. Bernard Parish that posed a threat to the health and/or safety of the residents of the parish. Stipulation 20.

11. On February 26, 2009, a lawsuit was filed in Louisiana state court against the Parish of St. Bernard, styled *Nolan Estopinal, et al v. Parish of St. Bernard, et al.*, 34th Judicial District Court of St. Bernard Parish, Louisiana, Case No. 113,313. Stipulation 21. Plaintiff's Exhibit 4.

12. The currently controlling pleading, the Fourteenth Amended and Supplemental Petition, in the *Estopinal* Litigation was filed on October 11, 2010. Stipulation 22.

13. At a minimum, seventy three (73) named plaintiffs and fifty-seven (57) properties are identified in the *Estopinal* Litigation. Stipulation 24; Plaintiff's Exhibit 4.

14. In addition to *Estopinal* Litigation, other individual suits have been filed against the Parish of St. Bernard seeking similar relief. Stipulation 23. See Exhibits Plaintiff's

        Exhibits 4-14, which are some of the individual suits against the Parish . All of these petitions allege that SBPG wrongfully demolished the plaintiffs' houses. *Id*   Virtually all of the plaintiffs allege, among other things that SBPG was negligen See Plaintiff's Exhibits 4-14.

15. The plaintiffs in all of the suits make claims for the property damage caused by the demolition of their houses, except for Gerald Artique, an *Estopinal* plaintiff who alleges that he was "harassed" in anticipation of demolition.  But they also make claims for "injury" or personal injury damages as contemplated by the Personal and Advertising Injury type of occurrence covered by the policy. . Plaintiff Exhibits 4-14. Allan & Kathy Reichert, Real Investments, LLC, Martin Cross, Oren Welborn, the Jones, Curtis Pitre specifically pled for "mental anguish." Plaintiff's Exhibit 6, paragraph 7; Plaintiff's Exhibit 7, paragraph XV; Plaintiff's Exhibit 8, paragraph XIV; Plaintiff's Exhibit 9, paragraph X;Plaintiff's Exhibit 12, paragraph XII, Plaintiff's Exhibit 13, paragraph 7. The *Estopinal* class action plaintiffs specifically pled for "mental anguish and emotional damages" and "delay and inconvenience."  Plaintiff's Exhibit 4 (See specifically the 14th Amended Petition at page 42/54 paragraph 37.Allan and Kathy Reichert, Martin Cross, the Jones and Curtis Pitre also pled for "loss of use" damages. Plaintiff's Exhibit 6, paragraph 7; Plaintiff's Exhibit 8, paragraph XIV; Plaintiff's Exhibit 12, paragraph XII, Plaintiff's Exhibit 13 paragraph 7.  Oren Welborn also pled for "humiliation," "emotional distress" and "loss of time" damages. Plaintiff's Exhibit 9, paragraph 7. Curtis Pitre, Allan & Kathy Reichert also pled for "emotional strain and stress" damages. Plaintiff's Exhibit 13, paragraph 7; Plaintiff's Exhibit 17, paragraph 6. The Bohannans and Judy Henderson only pled for "damages" generally in their petitions.. Exhibit 5 paragraph 6;

      Exhibit 11 paragraph 6. The Bohannans also pled for "loss of rental proceeds." Plaintiff's Exhibit 5, paragraph 6. The *Chenier* plaintiffs sued for "general damages", and for "damages for delay and inconvenience." Plaintiff's Exhibit 14, paragraphs 9, 20, 26, 33, 39 &45.

16. Each plaintiff claims his property was demolished and/or damaged by the St. Bernard Parish Government. Stipulation 25.

17. The condemnation and demolition actions took place over the course of more than a year, with different properties located in different places being demolished and damaged at different dates and times. Stipulation 26.

18. Lexington issued Public Entities Excess Liability Policy Numbers 9607745, 001751696, 026462477 to SBPG in effect from February 1, 2008 to February 1, 2009, February 1, 2009 to February 1, 2010 and February 1, 2010 to February 1, 2011, respectively to St. Bernard Parish Government. Stipulation 9.

19. SBPG sought coverage under the policies. Defendant Exhibit 1 On February 28, 2011, SBPG's attorney, William McGoey sent a letter requesting coverage and a defense under the policy. Stipulation 30.  Defendant's Exhibit 1.

20. On April 8, 2011, Lexington's Claims Examiner, Michael Sullivan, responded in a letter to McGoey dated April 8, 2011 Stipulation 30 & Defendant's Exhibit 1. Mr. Sullivan's response stated: "Please provide evidence that the Parish has paid the retained limit of $250,000.00 and explain what payments the Parish wants Lexington to make." Defendant's Exhibit 2. This statement is an admission against interest that there is only one $250,000.00 retained limit that applies to all of the alleged wrongful demolitions.

21. The Lexington Policies provide coverage for "that portion of the **ultimate net loss**, in excess of the **retained limit** or **underlying insurance**, whichever is greater, that the **insured**, becomes legally obligated to pay as **loss amounts** by reason of liability imposed by law or assumed under an **insured contract** because of **bodily injury, property damage**, or **personal and advertising injury** arising out of an **occurrence** during the Policy Period and to which this insurance applies." Stipulation 10; Page 1 of Plaintiff's Exhibits 1,2 & 3.

22. The Lexington Policies define "personal and advertising injury," in relevant part, as follows:

> AA. **Personal and advertising injury** means injury, including consequential bodily injury arising out of one or more of the following offenses:
>
> * * *
>
> 3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor; Stipulation 11; Section II (A.A. on page 6 of Plaintiff's Exhibits 1,2 & 3.

23. The Lexington Policies define "occurrence" in pertinent part as follows:

> * * *
>
> 2. With respect to **personal and advertising injury**, an offense arising out of **your insured organization** work that causes **personal and advertising injury**. All damages that arise from the same, related or repeated injurious material or act will be deemed to arise out of one **occurrence**, regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants. Stipulation 12; Section IIX on page 5 of Exhibits 1,2 & 3.

5

24. The Lexington Policies define "retained limit" as:

The **retained limit** applicable to each and every **occurrence, wrongful act, employment practices wrongful act,** or **employment benefit wrongful act** as shown in the Declarations and to which this insurance applies.

The **retained limit** shall be reduced by the payment of **loss amounts**, but shall not be reduced by the salaries of **your employees, your** office expenses, or expenses or any claims servicing organization that **you** have engaged Stipulation 13; Section II(E.E.) on page 7 of Plaintiff's Exhibits 1,2 & 3.

25. The Lexington Policies define "loss amounts" as:

> **Loss amounts** means damages and shall also include all fees, including legal fees, costs and expenses, as well as those expenses described in subparagraph B.3.b. of SECTION I. COVERAGES that **we** incur in connection with the defense and settlement of **claims** or **suits we** defend. **Loss amounts** shall not include salaries of **our** employees. Stipulation 14; Section II(S) on page 5 of Plaintiff's Exhibits 1,2 &3.

26. With regard to the retained limit, the Lexington Policies provide that "the retained limit as shown in the Declarations:

   1. Shall be reduced by **loss amounts** paid for **occurrences, wrongful acts, employment practices wrongful acts,** or **employee benefit wrongful acts** covered under this Policy; and

   2. Applies separately to each and every **occurrence, wrongful act, employment practices wrongful act,** or **employee benefit wrongful act**

6

       or series of continuous, repeated, or related **occurrences, wrongful acts,** or **employee benefit wrongful acts;**

Stipulation 15; Section III(L) on page 10 of Plaintiff's Exhibits 1,2 & 3.

27. The Lexington policies provide that "Our duty to pay any sums that you become legally obligated to pay arises only after there has been a complete expenditure of **your retained limit** or all **underlying insurance,** whether collectible or not, has been exhausted by means of payments for judgments, settlements, or defense costs. **Your retained limit** shall not be exhausted by **your** office expenses, **employees'** salaries, or expenses of any **claims** servicing organization that **you** have engaged. **We** will then be liable only for that portion of damages in excess of **your retained limit** up to **our** limits of insurance." Stipulation 16; Section III(M) on page 10 of Plaintiff's Exhibits 1, 2 & 3.

28. The Lexington Policies define "wrongful act" in pertinent part as:

       Any actual error or misstatement, omission, negligent act, or breach of duty including misfeasance, malfeasance by **you** including, but not limited to , those constituted by:

       …. 2.  Any negligent ministerial act;… .

Section II(OO.) on page 8 of Plaintiff's Exhibits 1, 2 & 3.

29. The Lexington Policies are subject to a ten million ($10,000,000.00) per occurrence and aggregate limit of liability. Stipulation 17; Declarations Page of Plaintiff's Exhibits 1, 2, & 3 (Note the Declarations page is the 4th physical page of Plaintiff's Exhibit 1)

30. In addition, the Declarations pages of the Lexington Policies provide:

   Item 4. Retained Limit:

   $250,000.00       Any one **occurrence** or **wrongful act** or **employment practices wrongful act** or series of continuous, repeated or related **occurrences** or **wrongful acts** or **employment practices wrongful acts** or **employment benefit wrongful acts**

   Stipulation 18, Declarations Page of Plaintiff's Exhibits 1,2 & 3.

31. The Lexington insurance policy provides coverage to all of the alleged wrongful[1] demolitions. Plaintiff's Exhibits 1, 2 & 3.

32. The alleged wrongful demolitions of the plaintiff's houses allegedly caused injury and as such are covered as an "occurrence" because the wrongful demolitions allegedly caused **personal and advertising injury**. The alleged wrongful demolitions constitute "personal and advertising injury" as they are an offense arising out of SBPG's work that allegedly caused personal injury, i.e. mental anguish, humiliation, emotional stress and strain, and loss of use. Plaintiff's Exhibit 1, insurance policy page 6, Plaintiff's Exhibit 2, insurance policy page 6, Plaintiff's Exhibit 3, insurance policy page 6; Plaintiff Exhibits 4-14.

33. The wrongful demolitions also constitute a Personal and Advertising Injury because they allegedly caused "injury, including consequential bodily injury, arising out of "…[T]he wrongful eviction from, wrongful entry into, or the invasion of the right of private occupancy of a room, dwelling or premises that a

---

[1] Throughout these Proposed Findings of Fact, SBPG uses the terms "wrongful" and phrases such as "wrongful demolition", wrongful entry", and "wrongful invasion of the right of private occupancy. These should not be construed as an admission that any of SBPG's actions are wrongful. The plaintiffs in the wrongful demolition suits allege that SBPG's conduct is wrongful, and thus SBPG uses this word and phrases in the context of addressing the issue of whether the Lexington policies provide coverage. SBPG maintains that all of the demolitions were lawful.

person occupies by or on behalf of its owner, landlord, or lessor. Plaintiff's Exhibit 1, insurance policy page 6, Plaintiff's Exhibit 2, insurance policy page 6, Plaintiff's Exhibit 3, insurance policy page 6; Plaintiff Exhibits 4-14.

34. All of the wrongful demolition plaintiffs allege that SBPG committed a "wrongful act" as they all allege that SBPG committed an "actual or alleged error", or "negligent act," or "breach of duty", including by not limited to a negligent ministerial act. Section II(OO.) on page 8 of Plaintiff's Exhibits 1, 2 & 3; Plaintiff's Exhibits 4-14.

35. All of the wrongful demolition plaintiffs allegedly suffered damages that "arise from the same, related or repeated injurious material act", that is SBPG's plan to demolish unrenovated,Katrina-damaged structures that were a danger to public safety and failed to meet minimum housing standards. As such, the alleged wrongful demolition of all of the plaintiff's houses arises out of one **occurrence.** Stipulation 12. Stipulations 1-8; Defendant's Exhibits 6 & 7; Plaintiff's Exhibits 4-14.

36. The $250,000.00 retained limit applies once as all of the wrongful demolition plaintiff's claims arise out of a "series of continuous, repeated or related occurrences" or "wrongful acts" Stipulations 1-8; Plaintiff's Exhibit 1, insurance policy page 10, Section III(L) and Item 4 of the Declarations Page, which is the 4th physical page of Plaintiff's Exhibit 1.;Plaintiff's Exhibit 2,insurance policy page 10, Section III(L) and Item 4 of the Declarations Page, which is the 4th physical page of Plaintiff's Exhibit 2, Plaintiff's Exhibit 3, insurance policy page

10 Section III(L) and Item 4 of the Declarations Page, which is the 2nd physical page of Plaintiff's Exhibit 3.:Stipulations 1-8.

        Respectfully Submitted by

        /sWilliam M. McGoey
        WILLIAM M. MCGOEY, ESQ. (#14205)
        JEANNE N. JUNEAU, ESQ. (# 25123)
        8291 W. Judge Perez Drive
        Chalmette, Louisiana 70043
        Telephone:   (504) 278-4348
        Facsimile:   (504) 278-4493
        *Counsel for St. Bernard Parish Government*

## CERTIFICATE OF SERVICE

I hereby certify that this pleading has been served on all parties using the Court's CM/ECF system.

        /s William M. McGoey