UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

LEXINGTON INSURANCE COMPANY                CIVIL ACTION

VERSUS                                     NO: 11-1865

ST. BERNARD PARISH GOVERNMENT              SECTION: R

                        **ORDER AND REASONS**

   Before the Court is Lexington Insurance Company's motion for a new trial or to amend or alter the Court's judgment, in which the Court held that the St. Bernard Parish Government is entitled to coverage by Lexington's insurance policies for damages caused by St. Bernard in condemning and demolishing properties.[1]  For the following reasons, the Court DENIES Lexington's motion.


I.   BACKGROUND

   This insurance dispute arises out of the St. Bernard Parish Government's condemnation and demolition of numerous structures that the Parish deemed to be unsafe. After Hurricane Katrina, St. Bernard passed an ordinance that required Parish residents to repair their properties before specific deadlines and authorized St. Bernard to remove unsafe buildings if residents did not comply with the deadlines.  On January 22, 2008, the St. Bernard Parish Council approved the condemnation of 5,731 structures, after which many of the identified properties were demolished

---

   [1]   R. Doc. 44.

over the course of more than a year. In February 2009, seventy-three property owners sued St. Bernard in Louisiana state court, asserting claims of inverse condemnation.

Lexington Insurance Company issued St. Bernard three year-long excess public entity liability insurance policies that ran from February 1, 2008 to February 1, 2011. Under the terms of the insurance policies:

> **[Lexington]** shall provide that portion of the **ultimate net loss**, in excess of the **retained limit** or underlying insurance, whichever is greater, that the **insured** becomes legally obligated to pay as **loss amounts** by reason of liability imposed by law or assumed under an insured contract because of **bodily injury, property damage, or personal and advertising injury** arising out of an **occurrence** during the Policy Period and to which this insurance applies.[2] (original emphasis)

The policies define a personal and advertising injury as, *inter alia*, "a wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor."[3] Further, the policies have a $250,000 retained limit and identify the retained limit as applicable to "[a]ny one occurrence or wrongful act or employment practices wrongful act or employment benefit wrongful act or series of continuous,

---

[2]   R. Doc. 33 at 2.

[3]   *Id.*

repeated, or related occurrences or wrongful acts or employment practices wrongful acts or employment benefit wrongful acts."[4]

St. Bernard sought coverage under the insurance policies for the claims asserted in the state court lawsuit. On August 3, 2011, Lexington filed a complaint in this Court, requesting a declaratory judgment that the damage to each individual property constituted a separate occurrence under the insurance policies and therefore the damage to each property must exceed the $250,000 retained limit before Lexington's duty to provide coverage to St. Bernard is triggered.[5] The parties submitted stipulated facts and proposed findings of fact and conclusions of law to the Court for judgment.

After considering the entirety of the written record submitted by the parties, the Court found that a series of related occurrences took place under the terms of the insurance policies and that Lexington owed St. Bernard coverage for the injuries experienced by the plaintiffs in the state court suits.[6] Lexington now requests a new trial or that the Court alter or amend the judgment.

---

[4]   R. Doc. 33 at 5.

[5]   R. Doc. 1.

[6]   R. Docs. 42, 43.

**II.   STANDARD**

Federal Rule of Civil Procedure Rule 59(a) permits a court to grant a new trial following a nonjury trial "for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court." Fed. R. Civ. Pro. 59(a)(1)(B). Under Rule 59(e), a motion to alter or amend a judgment may be filed within 28 days after the entry of judgment. A district court has considerable discretion whether to grant a motion for new trial or a motion to alter or amend judgment. *See Pryor v. Trane Company,* 138 F.3d 1024, 1026 (5th Cir. 1998); *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993).

Motions for a new trial or to alter or amend a judgment must clearly establish a manifest error of law or fact or present newly discovered evidence. *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990). The motions "cannot be used to raise arguments which could, and should, have been made before the judgment issued . . . [and] cannot be used to argue a case under a new legal theory." *Id.* (internal citation omitted). Further, "[r]econsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Templet v. HydroChem Inc.,* 367 F.3d 473, 479 (5th Cir. 2004).

**III. DISCUSSION**

    **A.    Personal and Advertising Injury**

Lexington contends that the Court made several errors in its judgment, the first of which concerns the proper application of the insurance policy provision for personal and advertising injuries. The Court determined that the injuries caused by St. Bernard in condemning and demolishing properties qualified as personal and advertising injuries. Under the terms of the insurance policies, a personal and advertising injury occurs when there is "a wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor."[7]

In its motion seeking a new trial or alteration of the judgment, Lexington relies on many of the same arguments that formed the basis of its earlier submissions. Lexington contends that because St. Bernard did not own the properties at issue, the injuries cannot constitute personal and advertising injuries, since the wrongful actor must be an owner, landlord, or lessor. But, as the Court stated in its judgment, many courts have found the exact language at issue to be ambiguous and have held that the phrase "by or on behalf of its owner, landlord or lessor" can be interpreted to modify the phrase "that a person occupies."

---

[7]    R. Doc. 33 at 2.

Under this interpretation, the language "by or on behalf of ..." ensures that the person impacted has a legal right to occupy the property from which he has been evicted. Lexington argues that the Louisiana Supreme Court would not find the phrase to be ambiguous and points to decisions in which courts interpreted the phrase in the manner suggested by Lexington. But, Lexington fails to acknowledge that many circuit courts of appeal, including the Fifth Circuit, analyzed the phrase at issue in depth and found it to be ambiguous. *See American Guarantee and Liab. Ins. Co. v. The 1906 Co.*, 273 F.3d 605, 621 (5th Cir. 2001); *New Castle County, Del. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 174 F.3d 338, 348-350 (3d Cir. 1999). These courts held that a personal and advertising injury had occurred even though the actor did not own the property at issue. *Id*.

Under Louisiana law, a contract is ambiguous "when it is uncertain as to the parties' intentions and susceptible to more than one reasonable meaning under the circumstances and after applying established rules of construction." *Am. Druggists Ins. Co. v. Henry Contracting, Inc.*, 505 So.2d 734, 737 (La. Ct. App. 1987). Moreover, "[a]mbiguous policy provisions are generally construed against the insurer and in favor of coverage." *Cadwallader v. Allstate Ins. Co.*, 848 So.2d 577, 580 (La. 2003). Lexington has not demonstrated that the Court erred in interpreting the provision in light of the applicable Louisiana

law and the divergent holdings of courts across the country. Thus, the Court finds that Lexington has put forth no evidence that the Court's judgment contains a manifest error of law or fact.

Lexington also presents a new contention regarding the applicability of the personal and advertising injury provision. Lexington argues that because St. Bernard did not submit evidence that the properties were occupied, a personal and advertising injury did not take place under the terms of the insurance policies. As previously stated, motions for new trial or to alter or amend judgment cannot be used to raise arguments that could have been made before judgment. *See Simon v. United States*, 891 F.2d at 1159. Lexington does not attempt to argue that it could not have raised this theory in its earlier submissions. In fact, the term "occupies", on which Lexington bases its new contention, appears in the phrase that was central to Lexington's original argument against coverage. Yet, Lexington's conclusions of law did not present the occupancy of the demolished properties as an issue to be adjudicated. Nor does Lexington argue that the vacancy of the properties constitutes newly discovered evidence. Therefore, the Court will not consider Lexington's argument that personal and advertising injuries under the terms of the policies did not occur because St. Bernard failed to demonstrate that the properties it demolished were occupied.

### B. Number of Occurrences

Lexington also contends that the Court erred in its finding that the demolitions conducted by St. Bernard were related occurrences such that a single $250,000 retained limit applied to the injuries sustained by the state court plaintiffs. Lexington raises many of the same arguments that it has already presented to the Court, namely that the demolitions occurred at different times and locations. The Court has already addressed these arguments at length in its order and points Lexington to the language of its policies stating that "[a]ll damages that arise from the same, related or repeated injurious material or act will be deemed to arise out of one occurrence, regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.[8] In its order, the Court noted the breadth of the term "related" and the absence of the term in cases in which courts found that separate occurrences had taken place.[9]

More importantly, the Court cited the policy provision stating that the policy's retained limit "applies separately to each and every occurrence . . . *or series of continuous, repeated, or related occurrences.*"[10] (emphasis added). In arguing

---

[8] R. Doc. 33 at 3.

[9] R. Doc. 21-22.

[10] Exhs. 1 at 1, 10; 2 at 1, 10; 3 at 1, 10.

that St. Bernard dealt with each property separately and thus the demolitions are not related, Lexington fails to explain how, under its interpretation of the policies, actions could be deemed separate occurrences but also qualify as related occurrences. By the terms of the policies, it must be possible for occurrences to be related in some way but not be related acts in order for the phrase "series of continuous, repeated, or related occurrences" to have any meaning. *See, e.g., Lambert v. Maryland Cas. Co.*, 418 So. 2d 553, 560 (La. 1982) ("Some effect is to be given to every word or clause if possible for a court may not impute to the parties the use of language without meaning or effect."). The Court thus finds that Lexington has not demonstrated that the Court committed a manifest error of law in holding that the demolitions formed a series of related occurrences under the terms of the insurance policies.

Further, the Court rejects Lexington's contention that under the Court's reasoning, if St. Bernard's demolitions are related, they constitute a single occurrence that took place on January 22, 2008, when St. Bernard condemned the properties en masse. The Lexington policies did not take effect until February 1, 2008, and thus Lexington argues that it has no obligation to provide coverage. But, a personal and advertising injury stems from "a wrongful eviction from, wrongful entry into, or invasion of the

9

right of private occupancy."[11] Therefore, St. Bernard's condemnation of a property alone, without the ensuing demolition, did not produce a personal and advertising injury.

It is true that the Court cited St. Bernard's condemnation of properties on January 22, 2008 in finding that the demolitions of the condemned properties were related. But, it does not follow that the motion adopted by St. Bernard in which it condemned thousands of properties qualifies as an occurrence. Rather, the Court held that the resulting demolitions were related because they shared as their genesis a single action by St. Bernard. It is not disputed that the demolitions at issue occurred during the periods in which the Lexington policies provided coverage. Accordingly, the Court did not commit a manifest error of law or fact in holding that St. Bernard's actions in demolishing properties qualified as personal and advertising injuries and merited coverage under the insurance policies.

**C. Exclusions**

Lastly, Lexington challenges the Court's holding that Lexington is obligated to provide coverage up to the limit of the policies once St. Bernard exhausts the retained limit of $250,000 in litigating the state court suits against it. Lexington points to other exclusions or limits of coverage in the policies that may impact St. Bernard's coverage. But, Lexington filed this

---

[11]   R. Doc. 33 at 2.

declaratory judgment asking the Court to deny coverage and chose not to litigate other exclusions in the policies. The Court decided the issues raised and issued a final judgment on the merits after a trial on a stipulated record. The effect of the Court's judgment on any exclusions or limits of coverage that could have been but were not litigated is not an issue that is properly before the Court. The Court will not issue an advisory opinion on the preclusive effect of its judgment.

## IV.   CONCLUSION

For the foregoing reasons, the Court DENIES Lexington's motion for new trial or to alter or amend judgment.

New Orleans, Louisiana, this 7th day of March, 2013.

_____

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE